## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LIQID INC.,

    Plaintiff,

v.                                  CASE NO.:

ROBERT STEVENSON,

    Defendant.

_____/

## **VERIFIED COMPLAINT**

Plaintiff Liqid Inc. ("***Liqid***" or the "***Company***"), by and through its undersigned attorneys, as and for its Complaint against Defendant Robert Stevenson ("***Stevenson***" or "***Defendant***"), states as follows:

### **NATURE OF THE ACTION**

1. This is a civil action for breach of contract arising out of Stevenson's breach of his post-employment obligations to Liqid.

### **PARTIES**

2. Liqid is a composable infrastructure hardware and software company incorporated under the laws of Delaware and registered to do business in Florida, with its principal place of business at 329 Interlocken Parkway, Suite 200, Broomfield, Colorado 80021.

3. Stevenson is a citizen of the State of Florida who resides at 604 Masthead Court, Tampa, Florida 33602. Stevenson may be served at this address.

## JURISDICTION AND VENUE

4. Stevenson is subject to the personal jurisdiction of this Court because Stevenson is a citizen of and is domiciled in the state of Florida.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because Stevenson is the sole defendant and resides within the Middle District of Florida and because a substantial portion of the acts or omissions giving rise to Liqid's claims—namely, Stevenson's various breaches of his contractual obligations to Liqid, as outlined below—occurred within the Middle District of Florida.

6. This Court has subject matter jurisdiction over Liqid's claims under 28 U.S.C. § 1332, as Liqid and Stevenson are citizens of different states and the amount in controversy (as measured both by Liqid's damages and the value of its requested injunctive relief) are in excess of $75,000, exclusive of interest and costs.

## FACTUAL AVERMENTS

7. Liqid provides a composable hardware and software platform which enables users to manage, scale out, and configure physical bare-metal server systems in seconds.

8. Stevenson was a sales engineer tasked with, *inter alia*, partnering with Liqid's sales team to help drive sales with technical expertise; providing technical consultation to prospective users to streamline the assessment, validation and adoption of Liqid's solutions; assist in authoring appropriate responses to requests for proposals, including the development of supporting data, working in conjunction with Liqid's sales team and senior engineering staff; installing, supporting, and maintaining Liqid's solutions at pre-sales proof of concept deployments.

9. Stevenson voluntarily resigned his employment, effective January 13, 2023. Despite requests at the time, Stevenson refused to disclose the identity of his new employer or the nature of the services he would be providing.

10. Stevenson's role as sales engineer provided him the responsibility of serving as the technical lead for all phases of end customer engagement, providing support to certain Liqid clients in that role.

11. During his employment, through his access to company systems and networks, as well as through company meetings and presentations, Stevenson received access to Liqid's confidential and proprietary information. This includes confidential and proprietary information concerning Liqid's business practices, strategic plans, customer lists, personnel recruitment plans, and financial performance. The information to which Stevenson had access includes, but was not limited to, the following:

(a) Liqid's technology road map, inclusive of next-generation PCIe protocol, CXL protocol and IP-based fabric architecture (such as GPU-oF, etc);

(b) Liqid's technology architecture and design, including proprietary software and hardware architecture and/or configuration.

(c) Liqid's trade secrets and other intellectual property as well as integration and operation of Liqid's technology with third-party partners; and

(d) Trade secrets and best practices associated with deployment of Liqid's technology with third-party partners and customers.

12. Liqid maintains the confidentiality of the information described above by, among other things, requiring employees to execute an Employee Proprietary Information and Inventions Agreement ("EPIIA"); entering non-disclosure agreements with partners and customers; limiting access to internal networks and sub-networks containing proprietary software code, designs, architectures, repositories and software ticketing systems; limiting access to internal hardware designs and architectural files; requiring multi-factor authentication for sign-on activities to Liqid-issued personal devices, including necessary software applications used by Liqid in the course of ordinary business efforts; utilizing automated email alerts/notifications identifying emails from external senders; and using email signatures containing notifications of protocol to be followed if confidential information is accidently shared, or sent, to incorrect parties. Such information is not publicly known or available and is neither shared with nor readily ascertainable by Liqid's competitors.

13. In the course of its business, Liqid has invested substantial of time, labor, and money in the development of such information, which provides Liqid a valuable commercial advantage over its competitors.

14. On January 18, 2021, in conjunction with and in consideration of his employment with Liqid, Stevenson executed the EPIIA. The EPIIA restricts, *inter alia*, Stevenson's post-employment ability to solicit Liqid's employees, contractors, or consultants, restricts Stevenson's use of Liqid's proprietary and confidential information, and imposes affirmative obligations on Stevenson to return documents and materials reflecting such information. A true and correct copy of the EPIIA is attached hereto as Exhibit "A" and is incorporated herein by reference.

15. All employees of Liqid are required to execute agreements similar to the EPIIA to protect the Liqid's business and its interests in its confidential information, trade secrets, customer goodwill, and relationships with its customers and personnel.

16. On September 2, 2022, Stevenson elected to participate in Liqid's 2022 Sales Compensation Plan, in which plan participants were assigned a sales territory and tasked with generating profitable revenue, actively developing their territory, and selling to and servicing their assigned territory. Participants receive a base compensation as well as a quota-based variable compensation.

He later elected to participate in the 2023 Sales Compensation Plan on January 11, 2023 shortly before the termination of his employment.

17. In consideration of his participation in the 2022 and 2023 Sales Compensation Plans, Stevenson entered into the Plan Acknowledgement, agreeing to the terms and conditions therein, including terms restricting his post-employment competitive conduct and ability to solicit Liqid's customers and employees. A true and correct copy of the Plan Acknowledgements from 2022 and 2023 are attached hereto as Exhibit "B" and Exhibit "C" and incorporated herein by reference. The pertinent restrictive covenants in each are identical.

18. All participants in the 2022 and 2023 Sales Compensation Plans are required to execute agreements similar to the Plan Acknowledgement to protect Liqid's business and its interests in its confidential information, trade secrets, customer goodwill, and relationships with its customers and personnel.

19. The purpose of the competitive restrictions set forth in the EPIIA and Plan Acknowledgement, including the restrictions on subsequent competitive employment and the affirmative requirements to return documents and other materials reflecting Liqid's confidential and proprietary information, are to protect Liqid's confidential and proprietary information and trade secrets, including but not limited to the types of information identified in paragraph 11 above, the goodwill the Company has developed in the

6

marketplace with customers and its business partners, and the relationships with those customers, business partners, and Liqid's personnel.

20. Pursuant to the EPIIA, Stevenson agreed to maintain the confidentiality of Liqid's confidential and proprietary information both during and after his employment.

21. Specifically, Paragraph 1.1 of the EPIIA provides in relevant part:

> 1.1 Recognition of Company's Rights; Nondisclosure. At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon, or publish any of Company's Proprietary Information (as defined below), except as such disclosure, use, or publication, may be required in connection with my work for the Company. I will obtain Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at Company and/or incorporates any Proprietary Information. I hereby assign to Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns.

22. Further pursuant to the EPIIA, Stevenson agreed to return documents or materials reflecting or containing Liqid's confidential and proprietary information upon the termination of his employment.

23. Specifically, Paragraph 6 of the EPIIA provides in relevant part:

> 6. Return of Company Documents. When I leave the employ of Company, I will deliver to Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of Company. I further agree that any property situated on Company's premises and owned by Company,

7

including disks and other storage media, filing cabinets, or other work areas, is subject to inspection by Company personnel at any time with or without notice. Prior to leaving, I will cooperate with Company in completing and signing Company's termination statement.

24. If information protected by the EPIIA is disclosed to or used by Liqid's competitors, such competitors would be able to utilize such information to obtain an unfair competitive advantage. For example, Liqid's competitors could gain the benefits of the technical details of Liqid's products to develop a competing platform while freeriding off Liqid's investments, or they could use the information concerning Liqid's finances, profit margins, pricing methodologies, and customer preferences in order to unfairly undercut Liqid's bids.

25. Pursuant to the Plan Acknowledgement, Stevenson agreed, for a period of one year immediately following the termination of his employment with Liqid, (1) that he would not provide or conduct services within the United States of the same or substantially similar type as were being developed, marketed, offered, or provided by Liqid within the last two years of Stevenson's employment and are still being actively considered, pursued, or provided by Liqid, and (2) that he would not solicit Liqid's customers from the last two years immediately preceding the termination of his employment with whom he had material, work-related contact or about whom he obtained confidential information as Liqid's employee.

26. Specifically, Paragraph 8.I of the Plan Acknowledgment provides in relevant part:

> Participant acknowledges that Participant will be a member of Participant and management personnel at the Company. Participant further acknowledges that during Participant's employment with the Company, Participant will be privy to extremely sensitive, confidential, and valuable commercial information of the Company, which constitutes trade secrets belonging to the Company, the disclosure of which information and secrets would greatly harm the Company. As a reasonable measure to protect the Company from the harm of disclosure and use of their trade secrets and other confidential information against them, Participant agrees to the following restrictions:
>
> - Covenant Not to Compete. During the Restricted Period, Participant shall not engage in any Restricted Activities within the Restricted Territory.
>
> - Customer Non-solicitation Covenant. During the Restricted Period, Participant shall not, except in furtherance of Participant's duties as an employee of the Company, directly or indirectly solicit, induce, or encourage, or attempt to solicit, induce, or encourage, any Protected Customer or Protected Employee to reduce or terminate his/her/its relationship with the Company.

27. Appendix 1 to the Plan Acknowledgment defines relevant terms as follows:

> Competing Business means any business that is developing or has developed, or is marketing, selling or otherwise providing, a software or hardware solution facilitating composability of computing environments or any other Competing Product or Service.
>
> Competing Product or Service means any product or service that was being developed, marketed, offered or provided by the Company at any time during the last two (2) years of Participant's employment with the Company which the Company can show is

9

still being actively considered, pursued, or provided at the time at which the Company is seeking to enforce the restrictive covenant contained herein against Participant.

\* \* \*

Protected Customer means any individual or entity (a) that was a customer of the Company at any time during the last two (2) years of Participant's employment with the Company, and (b) with whom Participant had material work-related contact as an employee of the Company or about whom Participant acquired confidential information as an employee of the Company.

Protected Employee means any current employee of the Company (a) that was an employee of the Company at any time during the last two (2) years of Participant's employment with the Company, and (b) with whom Participant had material work-related contact as an employee of the Company.

\* \* \*

Restricted Activities means directly or indirectly (a) developing, marketing, offering or providing any Competing Product or Service or (b) owning, operating, managing, financing or providing any services or assistance of any kind to, whether as owner, shareholder, member, partner, joint venture, lender, financier, licensor, licensee, franchisor, franchisee, principal, agent, director, officer, manager, employee, consultant, broker, trustee, or in any other capacity whatsoever, to any Competing Business.  Notwithstanding the foregoing, Participant's passive ownership of not more than one percent (1%) of the outstanding voting stock of a publicly traded company shall not constitute Restricted Activities.

Restricted Period means the Term and the period of one (1) year immediately following the termination of Participant's employment [with] the Company.

Restricted Territory means the United States of America.

28. The restrictions outlined above from the Plan Acknowledgement continue through and including January 13, 2024**.**

29. Shortly before Stevenson's resignation of his employment, on or about January 10-12, 2023, Stevenson was observed taking photographs with his personal smartphone of company slideshow presentations concerning Liqid's 2023 Sales Kickoff, which contained Liqid's confidential and proprietary information including, among other things, financial results from 2022 and goals for 2023 on matters such as discount levels; strategic information concerning Liqid's procedures and methodologies for its quote and order process; and, details concerning Liqid's planned software and hardware releases for 2023.

30. Stevenson failed to return the photographs of the slideshow upon the termination of his employment with Liqid, as required by his contractual obligations under the EPIIA.

31. On information and belief, Stevenson retained possession of other confidential and proprietary information belonging to Liqid which Stevenson failed to return upon the termination of his employment.

32. Shortly after the termination of Stevenson's employment, Liqid became suspicious that Stevenson accepted employment with GigaIO (***"GigaIO"***), a direct competitor of Liqid which performs competitive services within the United States.

33. GigaIO holds itself out to be the provider of a rack-scale composable infrastructure solution.

34. Liqid conducts its business nationwide, and GigaIO competes with Liqid for projects throughout the nationwide "Territory" defined by the Plan Acknowledgement and employs a number of former Liqid employees.

35. On January 26, 2023, counsel for Liqid sent separate letters to GigaIO and Stevenson concerning Stevenson's post-employment obligations and requesting confirmation of Stevenson's employment with GigaIO. The correspondence expressly conveyed that Liqid does not consent to Stevenson's employment with or performance of services for GigaIO, nor to Stevenson's disclosure of Liqid's Proprietary Information. Liqid demanded that Stevenson confirm, in writing, no later than January 31, 2023 that he would not accept (or continue) employment with GigaIO and that he would allow Liqid to inspect his personal devices in order to identify and remove any Proprietary Information belonging to Liqid.

36. As of the filing of this Complaint, Liqid has not received a response from either Stevenson or GigaIO.

37. In early February after the response deadline established in the letters from Liqid's counsel, Liqid learned from a prospective customer that Stevenson was actively soliciting said entity to do business with GigaIO. Specifically, representatives of LSU—which is a prospective customer of Liqid—

a informed representatives of Liqid that GigaIO solicited LSU for business and that Stevenson served as the primary representative of GigaIO during the solicitation. Stevenson informed the representatives of LSU that he was a former Liqid employee on the call.

38. Within the last two years immediately preceding the termination of Stevenson's employment with Liqid, Liqid was actively pursuing and soliciting LSU as a customer. Liqid continues to pursue a business relationship with LSU.

39. Upon information and belief, Stevenson, in competition with Liqid, is performing essentially the same services for GigaIO and its clients as he previously performed while an employee of Liqid, and is using his knowledge of Liqid's confidential and proprietary information to solicit Liqid's customers and prospective customers to do business with GigaIO.

## COUNT I – BREACH OF THE EPIIA

40. Liqid incorporates its allegations contained in Paragraphs 1 through 39 of its Complaint as specifically set forth and incorporated herein.

41. Paragraph 6 of the EPIIA required Stevenson to return documents and other materials containing Liqid's Proprietary Information upon the termination of his employment with Liqid.

42. Stevenson resigned his employment with Liqid effective January 13, 2023.

43. At that time, Stevenson failed to return photographs that he took of a company slideshow presentation, which contain Liqid's Proprietary Information.

44. On information and belief, Stevenson failed to return other Proprietary Information belonging to Liqid at the termination of his employment.

45. Stevenson has refused Liqid's demand to permit the inspection of his devices to identify and remove Proprietary Information therefrom.

46. On information and belief, Stevenson is using Proprietary Information he obtained while employed with Liqid to solicit Liqid's customers and prospective customers in competition with Liqid.

47. As such, Stevenson is violating his confidentiality and nondisclosure obligations to Liqid, damaging Liqid, and causing Liqid irreparable harm that cannot be cured by monetary relief alone. Stevenson expressly acknowledged in the EPIIA that "[b]ecause [his] services are personal and unique and because [he] may have access to and become acquainted with the Proprietary Information of Company, Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to

any other rights and remedies that Company may have for a breach of this Agreement." (Ex. A at ¶ 7.)

48. Liqid is entitled to injunctive relief and compensatory damages in an amount to be proven at the trial of this action, as well as its attorneys' fees and the costs incurred in pursuing this action.

**COUNT II – BREACH OF THE PLAN ACKNOWLEDGEMENT**

49. Liqid incorporates its allegations contained in Paragraphs 1 through 48 of its Complaint as specifically set forth and incorporated herein.

50. In order to protect Liqid's goodwill in the marketplace, its confidential and proprietary business information, trade secrets, and substantial customer relationships, Paragraph 8.I of the Plan Acknowledgement prohibits Stevenson from competing with Liqid for a period of one year following the termination of his employment and from soliciting Liqid's customers from the last two years with whom Stevenson had material, work-related contact or about whom he obtained confidential information.

51. Stevenson resigned his employment with Liqid effective January 13, 2023.

52. Stevenson is subject to the non-compete provisions in the agreement until January 13, 2024.

53. Stevenson has, with full knowledge of the restrictions set forth in the Agreement, in direct competition with Liqid, accepted a position with GigaIO performing essentially the same role and services for GigaIO as he previously performed while an employee of Liqid, and is competing with Liqid for the same customers and prospective customers in order to induce them to do business with GigaIO.

54. Stevenson has refused Liqid's demand to terminate his employment with GigaIO.

55. As such, Stevenson is violating his non-compete obligations to Liqid, damaging Liqid, and causing Liqid irreparable harm that cannot be cured by monetary relief alone. Stevenson expressly acknowledged by execution of the Plan Acknowledgement that the non-compete obligations therein were designed to protect Liqid's "extremely sensitive, confidential, and valuable commercial information of the Company, which constitute trade secrets belonging to the Company, the disclosure of which information and secrets would greatly harm the Company." (Ex. B at ¶ 8.I.)

56. Liqid is entitled to injunctive relief and compensatory damages in an amount to be proven at the trial of this action, as well as its attorneys' fees and the costs incurred in pursuing this action.

WHEREFORE, Liqid respectfully demands trial by jury and requests that the Court enter judgment in its favor and against Stevenson on Liqid's Complaint as follows:

a) Awarding Liqid compensatory damages and litigation expenses, including attorneys' fees, litigation costs, and expenses, incurred in bringing this action;

b) Granting temporary, interlocutory, and permanent injunctive relief against Stevenson to enforce Paragraph 6 of the EPIIA and Paragraph 8.I of the Plan Acknowledgement; and

c) Awarding such other and further relief as the Court deems just and proper.

Dated:  February 13, 2023             Respectfully submitted,

BY: */s/ Richard G. Salazar*
Richard G. Salazar, Esquire
Florida Bar No. 0899615
Alexandra M. Dragovich, Esquire
Florida Bar No. 1025374
**BUCHANAN INGERSOLL & ROONEY PC**
401 E. Jackson Street, Suite 2400
Tampa, FL  33602
Telephone:  (813) 222-8180
Facsimile:   (813) 222-8189

*Local Counsel for Plaintiff, Liqid Inc.*

**Bryan Cave Leighton Paisner LLP**
Christopher P. Galanek*
Chris.Galanek@bclplaw.com
Brian M. Underwood, Jr.*
brian.underwood@bclplaw.com
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309

*To seek admission pro hac vice*

# VERIFICATION

I, Sumit Puri, declare as follows:

1.

I am over 18 years old. The information contained in this verification is true and correct and based upon my personal knowledge.

2.

I am Chief Executive Officer and Co-Founder of Liqid, Inc. ("Liqid"). This verification is submitted in support of Liqid's Complaint against Robert Stevenson and is based upon my familiarity with the matters herein through my employment at Liqid.

3.

I have personal knowledge of the matters set forth in the forgoing Verified Complaint, which are true and correct to the best of my personal knowledge. If called on to testify, I would competently testify as to the matters set forth in this verification and the forgoing Verified Complaint.

**I verify pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.**

_____  2/10/23
Sumit Puri